IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JEFFREY SCOTT FLACK                                                                PLAINTIFF

v.                                                                    No. 3:13CV82-MPM-JMV

WARDEN OUTLAW, ET AL.                                                            DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Jeffrey Scott Flack, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff alleges that the defendants failed to protect him from the attack of other inmates. The defendants have filed a motion [75] for summary judgment; the plaintiff has not responded to the motion, and the deadline to do so has expired. For the reasons set forth below, the motion [75] by the defendants will be granted, and judgment will be entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to

set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[1]

This *pro se* prisoner action filed on March 25, 2013, arises out of claims made by plaintiff Jeffrey Scott Flock, who at all relevant times was in the custody of the Mississippi Department of

---

[1] The exhibits to which the court refers in the recitation of undisputed material facts are those from the defendant's motion for summary judgment.

Corrections and housed at the Marshall County Correctional Facility (MCCF) in Holly Springs, Mississippi. *See* Complaint, Doc. [1]. Flack alleges that the defendants violated his constitutional rights by failing to protect him from assault by other inmates. During the relevant period, defendant Arthur Bowens was employed as a correctional officer at MCCF. On December 20, 2012, Flack was housed in MCCF's administrative segregation unit pending an investigation into his request for protective custody. *See* Amended Complaint, Doc. [7], at 4; Detention Notice, Exh. "D." When Flack asked to participate in outdoor recreation time, Officer Bowens helped escort him to the unit's recreation yard. *See* Doc. [7], at 8. Flack claims that several other protective custody inmates were already on the yard when he arrived, including Danny Brown, Joseph Duncan, and an unidentified inmate. *Id.* Inmates housed in segregation for protective custody at the Marshall County Correctional Facility are generally allowed to participate in outdoor recreation with other protective custody inmates. *See* Bowens Affidavit, Exh. "B." Before being placed on the recreation yard, each inmate was searched for weapons and asked if he had any conflicts with the other inmates who were present. *Id.* Flack concedes that when he was escorted to the recreation yard on the date in question, he never told anyone that he felt threatened by Duncan or any of the other inmates who were already on the yard at that time. *See* Doc. [7], at 4, 8; Bowens Affidavit, Exh. "B."

Flack states that after he was escorted to the recreation yard, Officer Bowens went back inside. *See* Doc. [7], at 4, 8. After two or three minutes, Officer Bowens returned with inmate Edward Henley. *Id.* Flack claims that Henley was being housed in administrative segregation pending disciplinary actions – and was not a protective custody inmate like everyone else on the recreation yard. *Id.*, at 8. Flack admitted, however, that he did not report to Officer Bowens or anyone else that he felt threatened or unsafe around Henley when arrived on the yard. *See* Doc. [7], at 8; Hearing Transcript, Exh. "A," at 3:21-4:1; Exh. "B." In addition, none of the other protective custody inmates

on the yard also said anything to the officers when Henley was brought out. *See* Exh. "A," at 22:17-23:2. Flack claims that Officer Bowens then removed Henley's restraints and returned inside. *See* Doc. [7], at 8.

Flack alleges that "one to two minutes" after Officer Bowens left the recreation yard, Henley approached him, told him there was unfinished business between him and his Gangster Disciple brothers, and struck him in the face with a closed fist. *Id*. According to Flack, Henley and Duncan then grabbed him, wrestled him to the ground, and kicked and stomped him. *Id*. Flack claims that when he tried to get up, Henley struck him on the head with razor blades, causing lacerations. *Id*. Flack states that the attack continued for several minutes before Officer Bowens and other officers entered the recreation yard and stopped it. *Id*. The officers never recovered a weapon at the scene. *See* Bowens Affidavit, Exh. "B."

MCCF medical department staff examined Flack immediately after the struggle; then, he was escorted by prison staff to the hospital emergency room for further treatment of his injuries. *Id*. Flack claims he was later returned to the same segregation unit where his attackers were housed until he eventually was transferred to another correctional facility two weeks later. *Id*., at 8-11.

Flack had never encountered any trouble with either Henley or Duncan, though he allegedly had a prior confrontation with inmates who claimed to be affiliated with the Gangster Disciples (the prison gang to which Henley and Duncan allegedly belonged). *See* Exh. "A," at 3:13-18. Flack had never used the MDOC "red tag" procedure to be kept separate from either Henley or Duncan before the incident. *See* Exh. "A," at 20:14-20. When Bowens spoke to Flack about the incident after he returned from receiving medical treatment, he admitted had no reason to believe that Henley, Duncan, or any of the other inmates present might attack him. *See* Exh. "B."

In addition, there is no evidence that Officer Bowens was aware of any prior conflicts between Flack and Henley or Duncan, and Bowens had no indication that such an incident was likely to occur. *Id*. Flack acknowledges in his complaint that he does not know why a non-protective custody inmate like Henley was placed on the recreation yard with him – whether it was simply a mistake or deliberately done. *See* Doc. [1], at 6. Further, Flack testified at the *Spears* hearing, "I don't know what occurred." *See* Exh. "A," at 3:9-13. Flack testified that he never received an explanation for Henry's placement on the recreation yard with him, and the warden at MCCF indicated in his response to Plaintiff's administrative grievance that an investigation had found no deliberate wrongdoing. *See* Exh. "A," at 4:2-16. Officer Bowens has stated under oath that, at the time, he believed that Henley – like Flack and the other inmates already on the recreation yard – was on protective custody at the time of the subject incident. *See* Exh. "B."

An Inmate Behavior/Information Chart was posted on each inmate's door identifying the inmate's name, inmate number, reason for being placed in segregation, and any other pertinent security-related information. *Id*. There also was another sheet on each inmate's door simply stating the reason he was there, i.e., "PC" or "Suicide Watch." *Id*. On the date in question, there was a sign on Henley's cell door stating "PC." *Id*. Henley's door had previously had a sign stating "Suicide Watch," but Officer Bowens had not worked in administrative segregation for approximately one week prior to that date and merely assumed his custody status had changed, as it is not uncommon for an inmate's reason for detention in administrative segregation to change. *Id*. However, Officer Bowens does not recall seeing Henley's Inmate Behavior/Information Chart posted on his door at that time, and he did not check Henley's paperwork to confirm whether Henley was, in fact, on protective custody. *Id*. It was later determined that Henley was not, in fact, a protective custody inmate, and

Officer Bowens was reprimanded by the warden for putting Henley on the yard with a group of protective custody inmates. *See* Second Step Response to Plaintiff's ARP, Exh. "F-1."

Flack submitted a prison grievance regarding the subject incident on December 23, 2012, through the Mississippi Department of Corrections Administrative Remedy Program (ARP). *See* McMullen Affidavit, Exh. "F," citing ARP No. MCCF-13-36. Flack filed the instant suit on March 25, 2013 prior to completing the two-step ARP process. Flack did not, however, complete the administrative grievance process until he received a second step response from Warden Timothy Outlaw on May 25, 2013 – some two months after filing the instant suit. *Id*.

**Failure to Exhaust Administrative Remedies**

Flack did not comply with the Prison Litigation Reform Act's requirement that he exhaust his available administrative remedies *before* filing suit; as such, his claims against the defendants are barred by the Prison Litigation Reform Act, which states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The administrative remedy program ("ARP") in place at the Mississippi Department of Corrections ("MDOC") facilities, including the facilities at the Marshall County Correctional Facility, has been approved by this court in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. 1971) (order dated February 15, 1994). A district court may dismiss a lawsuit if the plaintiff fails to complete the ARP. *Underwood v. Wilson*, 151 F.3d 292, 293 (5th Cir. 1998), *cert. denied,* 119 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999) (quoting *Rocky v. Vittorie,* 813 F.2d 734, 736 (5th Cir. 1987)). While the exhaustion requirement is not jurisdictional, *id.* at 293-95, "[a]bsent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies must be exhausted before the filing of suit should be imposed." *Wendell v. Asher,* 162 F.3d 877, 890-

91 (5th Cir. 1998); *Smith v. Stubble field*, 30 F.Supp. 2d 1168, 1170 (E.D. Mo. 1998). "To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation." *Wendell,* 162 F.3d at 981 (citations omitted). Flack did not complete the MDOC administrative remedy process before filing the instant suit. As such, the instant case must be dismissed.

**Conclusion**

For the reasons set forth above, the motion [75] by the defendants for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 23rd day of July, 2015.

> **/s/ MICHAEL P. MILLS**
> **UNITED STATES DISTRICT JUDGE**
> **NORTHERN DISTRICT OF MISSISSIPPI**